## J. L. AMES v. WHEELING & LAKE ERIE RY. CO., ET AL.

SALE OF RIGHT OF WAY—AGREEMENT TO TAKE CAPITAL STOCK WHICH BECOMES OF NO VALUE—VENDOR'S LIEN SUSTAINED.

A entered into a written agreement with a railroad company whereby the latter was permitted to locate and construct its railway upon his land, in consideration of $200 per acre, payable in capital stock of the company, which capital stock, it was agreed, should be worth par at the end of two years or the land should be paid for in cash. Subsequently A deeded the land to the railroad company. At the end of two years the stock was of no value. A then tendered the stock and demanded cash, which was refused. He then brought suit to enforce a vendor's lien. *Held*, that A is entitled to a vendor's lien, not only against the original railroad company but against subsequent purchaser or purchasers at foreclosure sale, to which he was not made party.

APPEAL from the Court of Common Pleas of Sandusky county.

HAYNES, J.

In the case of J. L. Ames, plaintiff, v. The Wheeling & Lake Erie Railway Co., defendant, coming into this court upon appeal, sundry pleadings were filed and leave finally taken to file an amended petition and the case has been heard on what is called the second amended petition and the answers thereto. At the time of the filing of that petition, The Mercantile Trust Co., was made a party and also files an answer.

The plaintiff in his petition sets forth: That the defendant railway company is a corporation duly incorporated under the laws of Ohio and owns and operates a line of railroad running from the county of Belmont, Ohio, to the county of Lucas, Ohio, and gives a description of the line. It really runs from the city of Toledo to a point opposite Wheeling in Belmont county. The petition sets forth further, that "At the September term, 1885, of the court of common pleas of Sandusky county, Ohio, beginning September 14th, the plaintiff, by the consideration of said court duly recovered a judgment against the railroad company, in the sum of $1,127.18, debt, and $41.90, costs," and that he had by virtue of said judgment a valid lien on said line of railroad, and further, a vendor's lien, as found by that court, to secure the payment of said sum. He further sets up, that at the February term, 1886, of the circuit court of this county, said judgment and decree was affirmed by that court. He sets forth further, that the railway company, purchased the said line of railroad, right of way, depots and platforms and other structures on the same on or about June 27, 1886, and that they purchased said property with notice of plaintiff's judgment and liens thereon and hold the same subject to plaintiff's prior liens thereon. He further says that the trust company, which is a corporation duly incorporated under the laws of New York, claim an interest in or a lien upon said line of railroad and right of way, depots, platforms and other structures on the same; that plaintiff's said liens are the first and best liens and prior to the lien of the trust company.

The defendant, the railway company filed an answer, in which they admit that the plaintiff recovered a judgment at the September term, 1885, against the company for the amount alleged in the petition " but

it denies that the plaintiff has, by virtue of said judgment, or otherwise, any lien whatever," as alleged.

It then sets forth on November 1, 1879, the railroad company executed its first mortgage bonds and sold them and to secure the same, on November 1, 1879, executed a mortgage to The Farmers' Loan & Trust Co., as trustee upon its line of railroad, and all its appurtenances and equipment and everything belonging to it; that said mortgage was duly recorded during the year 1880, and sets forth the conditions of defeasance. The amount of the bonds was quite large, some $3,500,000 I believe. That the railroad company failed to pay the interest which became due November 1, 1883, and on July 3, 1884, the trust company filed a bill in the circuit court of the United States for the northern district of Ohio, against said railroad company, and that such proceedings were had that a sale was made of the property by the special master commissioner, to Forest, Day and Garrison, as trustees, said sale was confirmed and deed made by Goodspeed, commissioner, to said trustees. That said deed was recorded. That afterwards on June 25, 1886, said trustees deeded said property to railway company. The defendant therefore admits the purchase of said railroad by the defendant but denies that it made said purchase with notice of plaintiff's judgment and liens or that it holds the property subject to any lien of plaintiff.

In reply to that, the plaintiff says·that the mortgage given to the trust company was foreclosed and the proceedings set out, in the circuit court of the United States, in the answer of the railway company has ceased to be a lien upon the property of the said railway company. I may say in this connection that it appears that the plaintiff was not made a party to that suit. It is not averred that he was nor is it denied. The railway company further answering to the amended petition, by an amendment to its answer, sets up that there are sundry liens, one in favor of the Central Trust Co., of New York, given by the railway company April, 1888, for three millions of dollars; it declares that it is still a subsisting lien upon defendant's railroad. The mortgage given by the railroad company is dated March 1st, I suppose of the same year, and is a lien for $2,800,000. That is the original mortgage I think. It further sets up that there are divers judgments rendered against them in different counties along the line of the road, and one of them I think in this county.

The plaintiff replies and says that there are no liens upon the tract of land sold by the plaintiff to the railroad company prior to the vendor's lien, and he has no knowledge of the other matters and things set forth and denies them.

The Mercantile Trust Co. set up its mortgage as executed on July 1, 1886, afterwards recorded in August, 1886, and prays that in any action or proceeding in this court the rights of said defendant may be preserved and that it may have such relief as it may be entitled to.

The case was heard upon evidence and the evidence which was put in was principally record evidence.

Briefly, if we have the facts correctly, the evidence shows that the original mortgage was made to the Farmers' Loan and Trust Co., November 1, 1879, and was thereafter recorded in 1880, early in the winter.

Next in order, on July 15, 1881, Ames made a contract for the sale of this right of way, giving the railroad company permission to enter upon his land to construct the road, and, in 1881, September 17, he executed a deed to the railroad company. On April 17, 1884, he filed his

petition to enforce his vendor's lien, and on November 7, 1885, he took his decree. Meanwhile, on July 8, 1884, the trustees filed their petition to foreclose the mortgage given to the Farmers' Loan and Trust Co., in the circuit court of the United States, and, on January 13, 1886, they took their decree. On April 23, 1886, the master commissioner, Goodspeed, sold the road to Forest, O'Day and Garrison, trustees and on June 22, 1886, the sale was confirmed by the United States court and shortly after the deed was made and recorded accordingly. On June 25, 1886, the trustees sold said premises to the railway company, and on October 7th the present action was brought in the court of common pleas of Sandusky county, Ohio.

On July 1, 1896, the railway company executed its bonds and mortgage to the Mercantile Trust Co., which was recorded in August, 1886. It further appears by the evidence introduced in the record of the first suit of Ames against the railroad company, that the suit was brought against the railroad company alone, for the purpose of enforcing a vendor's lien upon the property that had been sold by Ames to the railroad company. It further appears in the record that Ames, on July 15, 1881, executed a paper to the railroad company wherein and whereby it was agreed that in consideration of one dollar and the desire to avoid vexatious legal proceedings the railroad company might locate and construct its road on plaintiff's premises describing them, sixty-six feet wide, on the line surveyed just north of the Lake Shore and Michigan Southern railroad's right of way, the consideration for said land to be two hundred dollars per acre payable in the capital stock of said company, said stock to be worth par at the end of two years or said price of said land to be paid for in cash. Afterwards, on September 1st, in the same year, being a month and two days, afterwards Ames and wife executed a deed to the railroad company conveying to them that strip of land, naming the consideration as one thousand dollars in stock of the defendant company and containing the other conditions mentioned as being in the paper just referred to. At the expiration of two years, it is averred that the stock was of no value; that he tendered to the railroad company the stock and demanded the amount in cash that the company had agreed to pay for the land and it was refused and thereupon suit was brought and such steps taken in the case that a decree was rendered in the court of common pleas, the decree finding that there was due to the plaintiff on account of the matters and things alleged the sum of $1,000 with interest at six per cent. from September 25, 1883, and that the plaintiff was entitled to a lien, amounting in all to $1,127.18, and that said sum should be declared a lien on defendant's line of railroad and right of way through Ohio. To this finding and judgment the defendant duly excepted.

That case was taken upon error to the circuit court of this county and at the February term, 1886, was affirmed since that time the Supreme Court affirmed it at length without report, and we understand that a petition in error has been filed and the case is now pending in the Supreme Court of this state.

The records have been offered also of the mortgages to Forest, O'Day and Garrison and to the Mercantile Trust Co ; the deed of the master commissioner, Goodspeed, of the road to the railway company ; the original bill of complaint in the United States circuit court and the decree in the United States circuit court.

Upon this state of facts it will be seen that as between the plaintiff and the defendant, railroad company, the question of the right of the plaintiff to recover and have a lien has been settled by decision of the court of common pleas of this county and affirmed by the circuit court of this county. In that suit, however, as I have already stated, no other parties were made except the railroad company.

Upon this state of facts, the defendants make two questions here as to the right of the plaintiff to have this vendor's lien upon this right of way or upon his land covered by the right of way, and also his right to have an order for the sale of the property of the railway company. They also make another question : That the proper parties have not been made to the suit.

Now, to take these in their order—as to the right of the plaintiff to maintain his action for an order of sale of the property of the company for the enforcement of the vendor's lien in this case, we think the question is practically settled by the case of Railroad Co. v. Lewton, 20 O. S., 401, decided by the Supreme Court of this state, being a case that went up from the superior court of Montgomery county.

It will be necessary, in order to have an understanding of this matter, that I read this case, and, in passing through the reading of it, to show the distinctions and the application of the case to the one at bar.

In that case the defendant, Lewton, being the owner of the farm, entered into a contract with the Dayton, Xenia and Belpre Railroad Company, in the year 1853 whereby he agreed "to release to the said railroad company the right of way and the right to enter upon and construct their road through the following lands" (describing them) And "for and in consideration of the right of way, and the right to enter upon and construct said railroad, the said railroad company agree to pay to the said Henry Lewton the sum of fifteen hundred dollars, as follows, viz: one-third, $500, on or before commencing work on said lands ; one-third, $500, in one year, and one third, $500, in two years after the payment of the first payment with interest ; and also to make a road crossing and two cattle guards at or near station 600, and one cattle guard at the west end of said farm, and also to make a culvert or bridge crossing at a branch at station 615 large enough for wagon track." Those are the material points so far as this case is concerned. No deed was ever made for the right of way to the railroad company. The railroad company entered upon the lands of the plaintiff under that agreement and constructed its railroad. "In November, 1857"—which would be four years afterwards— "the defendant in error recovered a judgment against the railroad company for a balance of the purchase money. And in March, 1858, in the same action, a further judgment for $500 for the failure of said company to construct its road in the manner provided in the contract." (That is to say, I suppose the cattle guards and culverts or bridges, as the company had agreed to do.) "These judgments have never been paid. The said right of way has not been conveyed otherwise than by said instrument." "In January, 1855 (nearly two years before the suit was commenced) said railroad company executed a mortgage on said railroad to plaintiff in error, Charles W. Rockwell, trustee, to secure the payment of five hundred bonds for $1,000 each. Rockwell at the time had no actual notice that plaintiff's claim had not been paid." (The company had taken possession in 1853 and executed this mortgage in 1855.) "In October, 1865, Rockwell obtained a decree upon said mortgage for the sale of the railroad; and in January, 1866, the same was sold on said

decree to The Little Miami and Columbus and Xenia railroad companies (also plaintiffs in error) for a sum of money insufficient to discharge the mortgage liens. This sale was confirmed and the purchasers put in possession."

"The defendant in error was not a party to said action to foreclose, nor had he any actual knowledge of the pendency of the action." (In that respect, he stood in the same position that Ames stands in relation to the Wheeling and Lake Erie Railway—the only practical difference, so far, is, that Ames had made a deed while Lewton had not.)

"In April, 1868, the defendant in error obtained a decree of the amount due him on said judgment, and in default of such payment, for the sale of said railroad, with its rights, privileges and franchises for the purpose of satisfying said judgments. In this decree, or prior thereto, the court did not find the amount due on said mortgage nor settle any questions of priority, etc." (Apr. '68, was after the execution of the mortgage—three years—and after the sale to the Little Miami Railroad. This is the judgment or decree sought to be reversed in this proceeding. The several errors assigned by plaintiff in error may be embraced in this general question—Did the court below err in rendering said decree upon the foregoing state of facts? Several propositions, however, are embraced and must be answered separately.

1. Was the defendant in error entitled to the relief decreed to him?

What is the nature of the case made by him? The property ordered to be sold includes an easement of the right of way of the Dayton, Xenia and Belpre Railroad, over the lands of the defendant in error; and his claim, in part at least, was for unpaid purchase money for that easement.

A purchaser of realty ought not to enjoy the estate purchased without paying for it; therefore in equity, the vendor has a lien upon the property sold for the payment of the purchase money. (The legal title having been conveyed by Ames, he would come technically under what is called a vendor's lien.) It may be that this equity of the defendant in error is not technically what is called a "vendor's lien," inasmuch as the legal title has not been conveyed by him to the purchaser. It is however, at least as strong a hold upon the property sold as the lien of a vendor after title conveyed; for here not only is an equity retained, by the vendor in the property sold, to the extent of the unpaid purchase money, but the legal title is also retained by him as additional security.

It cannot be said in that case, "that, from the nature and objects of this sale, the vendor did not intend to rely upon the thing sold as security for his payment." Retaining the legal title, is very strong if not conclusive evidence, that he did intend to rely upon it as security. The presumption, however, in all cases, even where the vendor conveys the legal title, is, that he intends to rely upon the property sold as security. And before his abandonment or waiver of such security can be found it must be shown that he did not intend to rely upon it.

Nor will it do to say that "the difficulty in determining the priorities of such liens, or in executing decrees in such cases," is evidence of an intention of the vendor to waive his lien. If such a lien can be enforced at all, the presumption that the vendor intended to rely upon it is not weakened by the difficulties in the way, and if a court of chancery could find no means of adjusting co-assisting liens or equities of this kind, or of enforcing the sale of such property to satisfy them, the only inference would be, that the vendor has been disappointed in his expectations. But whether a court of equity has power to decree and means to execute

its decrees in such cases, are the ultimate questions in this case and not preliminary ones, the solution of which may aid us in working out a conclusion." (That is to say—he has his right of lien, and the question whether it can be worked out, cr not, is a question for the court afterwards.)

"We can see no insurmountable difficulties in sustaining and executing the decree in this case, whether it be regarded. as a decree enforcing a specific lien upon the property, or a decree compelling the specific performance of the contract.

2. That a vendor's lien is applicable to the sale of an easement in land is not in terms denied by counsel for plaintiffs in error, and we see no good reason why such a lien may not attach against an easement as well as any other interest in land.

3. The judgment for damages for not constructing the road in the manner provided for in the contract, is as much the price of the interest sold to the railroad company, as was the $1,500 agreed to be paid in money. The only difference is that the amount of cash was ascertained and agreed upon by the parties, while the amount of the damages was not ascertained until judgment. Both sums arose in contract, and constituted the compensation the vendee was to return to the vendor for the interest purchased.

4. Having found the amount of purchase money due the plaintiff below, as a predicate for the decree of sale, in default of the payment thereof, it was not error in the court below to decree the sale before finding the amount due upon the mortgage lien of Rockwell and determine the priority of the liens. In such matters there is a discretion in the court. And we cannot say that such discretion was abused in this case.

5. The defense by Rockwell, the Little Miami and Columbus and Xenia railroad companies that they are innocent purchasers for a valuable consideration, and without notice of the right of the defendant in error, cannot avail them.

The fact that defendant in error retained the legal title to the right of way sold, was sufficient to put them upon inquiry. They and each of them had constructive notice of the legal title. And had they, as prudent persons, made the inquiry as suggested by the state of the legal title, they would have come to the knowledge of the rights of the defendant in error.

6. The defendant in error was in no wise affected by the sale under the mortgage. He was not a party to that suit.

7. The last question we propose to consider is one of greater difficulty.

The court below decreed the sale of the whole of the Dayton, Xenia and Belpre Railroad—which at the time was being used as a public highway—to satisfy a specific lien of the defendant in error upon a section of the right of way. Is such decree erroneous? (When they say it was used as a public highway, we of course understand it that it was used for a railroad.)

The rights of the public must not be ignored; and it is the right of the public that this highway be maintained. It was by and through the exercise of its power of eminent domain that it was established. And we take it that the right of the public to maintain the highway is paramount to the right of the defendant in error to destroy it. To sell the section of the right of way over the lands of the defendant in error, and separate its use from the line of the road would destroy the highway.

Hence to have decreed a sale of this fraction of the road or right of way, would have been erroneous. The public having delegated to the Dayton, Xenia and Belpre Railroad Co: the power to exercise the right of eminent domain in the establishment of this highway, the company had power to obtain the right of way for its road in two modes—by condemnation and prepayment of compensation under the right of eminent domain, or by contract with the owners of the land, upon such terms as might be agreed upon. In Lewton's case the latter mode was resorted to, and, by the terms of the contract, a right to enter upon the land and construct the road before the payment of compensation was secured; and yet that compensation was secured to Lewton by an equitable lien upon the easement thus obtained by the company. And justice requires that this security shall be applied to the satisfaction of Lewton's claim. Can it be done? The difficulty is apparent rather than real. The public has and can have no right which springs from an act of injustice to the defendant in error. Its only right is to preserve the continuity of the road, of the line of public travel and transportation. And this right is well subserved, if the ownership and management of the highway be in the hands of one party as another. Hence the public has no interest impaired by a sale of the whole line.

We have seen that the Little Miami, and Columbus and Xenia Railroad Companies and Rockwell, stand in the shoes of the Dayton, Xenia and Belpre Railroad Co. And what shall be said of the rights of the latter? Has it a right to retain the property of the defendant in error without paying for it?

Having obtained the possession of this property from the defendant in error, under a promise to pay for it, the Dayton, Xenia and Belpre Railroad Co. may not so blend and mix it with other property of its own as to constitute a great and indivisible highway, and then be permitted in equity to say to the defendant in error, "this property upon which you had and have a specific lien, had become, by my act, a part of a highway which the public has an interest in maintaining, and because the withdrawal of your part from the common use would defeat the public right, therefore you may not enforce your lien."

On the other hand, because a part may not be sold on account of the paramount right of the public to keep the highway intact, a necessity arises, in order that justice may be done to the defendant in error, to decree the sale of the whole line of the road to satisfy his lien. And this is the only mode in which the rights and interests of other parties, either as owners or lien-holders upon the road can be protected, and their property or security saved from absolute destruction.

The doctrine of this case is supported by Walker v. Railway Co., 12 Jurist, N. S. pt. 1, page 18. See also 2 Story on Equity Jurisdiction, by Redfield, 460, and 33 Vermont, 311. The Justices concurred.

Now is there anything in the case at bar that should take it out of the doctrines laid down by the Supreme Court in the case which I have just read? There are some points of difference in the two cases. First, as I have already said, the legal title had been conveyed by Ames to the railroad company; but it has been held by this court, as formerly constituted, that that purchase price was a vendor's lien or that the plaintiff had a lien in the nature of a vendor's lien or a vendor's lien properly— upon the land so sold, and with that judgment, under the authorities and under the authorities in this case, we are satisfied. We think there

should be no question that Ames has the right to enforce his vendor's lien upon the premises that he conveyed to the railroad company.

The point is made that because in the deed there was a provision made that the stock should be worth a certain sum in the period of two years, that that became simply a personal covenant on the part of the railroad company, but we think upon the contract of sale and upon the deed made under that contract of sale, that the company had agreed to pay the sum of one thousand dollars—or whatever the sum named is—when the deed was made; that it had the right to and under the contract did turn out certain stock, but it was the agreement in substance between the parties that he was to have the twelve hundred dollars; the stock was taken and if that was worth the face of it at the end of two years, that was to be in satisfaction of the consideration paid, and if not, then their obligation should still remain to pay the sum they agreed to pay for the land, and that the plaintiff had the right, under the principles of law laid down, to look to his lien upon the land for his payment and that it devolved upon the railroad company, as stated in Railroad Co.'s v. Lewton, *supra*, to show that he did not intend to rely upon that and allow the company to have their land exempt from the vendor's lien. Having this vendor's lien upon the land he had sold, the question is whether or not that lien has been cut off by any proceedings had in the case.

It appears that the first mortgage made upon the property was made almost immediately upon the laying out of the line; it was made before the railroad company had obtained this right of way, either by contract or by deed; and the question is made here whether or not, having purchased the land, it should not have passed under the mortgage in such a manner that the property would be exempt in the hands of the mortgagee and the purchaser under him, from a vendor's lien.

We are very clearly of the opinion that the mortgagee in that case stood in the shoes of the Wheeling and Lake Erie Railroad Co.; that when the deed was taken to that land it was taken subject to this vendor's lien; that the person who held the prior mortgage had no greater interest or right in the property than the Wheeling and Lake Erie Railroad Co. and as the railroad company held it subject to the vendor's lien, the mortgagee held it in the same manner.

Ames was not made a party to the proceeding for sale under that mortgage, and his rights were not cut off by it. He stood in the same position as if a sale had not been made.

It is said also that the railway company when they became the purchasers of the property took the property free from the vendor's lien upon the property; but the parties who made that purchase made it after the original suit was brought against the railroad company to enforce the vendor's lien; that matter was a matter pending at that time between plaintiff and the railroad company, and it was bound in making its purchase to know what the rights of the plaintiff were under that decree. We think it was bound also by the deeds which had been filed to know that in case the consideration was not paid, the plaintiff would have a vendor's lien upon the property, and that the Wheeling and Lake Erie Railway Co., without question, took the land subject to the vendor's lien of the plaintiff.

Discussion has been had as to how far the plaintiff should have a lien upon this railway company. We think there can be no question under this decision in Railroad Co.'s v. Lewton, *supra*, that the plaintiff

is entitled to a decree for the sale of the right of way of the company and that that sale would cover whatever rights the railway company have in the right of way.

In speaking of this vendor's lien, so far as this court is concerned, we shall make the vendor's lien applicable only to the property conveyed to the railroad company by Ames; but, in order to enforce that lien, under the principles laid down in Railroad Co.'s v. Lewton, *supra*, and as a matter of necessity, an order must be taken for the sale of the whole of the right of way of the road and so far as that is concerned, a decree will be taken for the amount due and an order of that kind entered.

A second question has been made as to the parties to this suit. It will be seen that in making this decree we do not find the amount that is due to the Mercantile Trust Company. It is also claimed that there are some persons who have—perhaps in this county—some judgments said to be liens upon portions of the road. Under the authority of the decision in Railroad Co.'s v. Lewton, *supra*, we do not deem it necessary to find the amount that may be due to the Mercantile Trust Company, or to any other persons who are lienholders at this time. The sale will be made and the money brought into court with the right reserved to the Mercantile Trust Company to find the amount due to it and to marshal the respective liens of the parties. If parties have judgments they may be brought in and made parties to the suit prior to the time when the respective rights of the parties to the suit are settled.

A decree may be entered in accordance with the suggestions that have been made.

*Richards* and *Heffner*, for Plaintiffs.

*John M. Lemmon*, for Railway Co.